# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

ELEAZAR FLORES-LOPEZ,

        Petitioner,    :    Case No. 3:18-cv-330

  - vs -        District Judge Walter H. Rice
        Magistrate Judge Michael R. Merz

TIM SHOOP, Warden,
  Chillicothe Correctional Institution

        :

        Respondent.

## SUPPLEMENTAL REPORT AND RECOMMENDATIONS

This habeas corpus case is before the Court on Petitioner's Objections (ECF No. 7) to the Magistrate Judge's Report and Recommendations (ECF No. 4). District Judge Rice has recommitted the case for reconsideration in light of the Objections (ECF No. 8).

Petitioner and his brother Joel were convicted in the Montgomery County Court of Common Pleas on a charge of possession at least 100 times the bulk amount of methamphetamine in violation of Ohio Revised Code § 2925.11(A). The conviction was affirmed on appeal. *State v. Flores-Lopez,* 2017-Ohio-690, 85 N.E.3d 534 (2nd Dist. Feb. 24, 2017), appellate jurisdiction declined, 150 Ohio St. 3d 1429 (Sept. 13, 2017).

Flores-Lopez did not deposit his Petition in the prison mail system until September 26, 2018, thirteen days after the statute of limitations expired[1]. The Magistrate Judge nonetheless

---

[1] For an incarcerated person, deposit in the prison mail system is deemed filing for purposes of any deadline. *Houston v. Lack*, 487 U.S. 266 (1988); *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002); *Towns v. United States*, 190 F.3d 468 (6th Cir. 1999).

reached the merits of the case on initial review under Habeas Rule 4. Because the habeas statute of limitations is not jurisdictional, the Court has authority to decide on the merits, but the State has not yet had an opportunity to decide whether to plead a statute of limitations defense because no answer has been ordered in the case. No forfeiture of these defense can properly be inferred at this stage of the litigation.

Petitioner pleads two Grounds for Relief:

> **Ground One:** Petitioner was denied due process of law in violation of the Fifth and Fourteenth Amendments to the United States Constitution when the lower courts failed to supperss [sic] statements made during the course of an interrogation using an unqualified interpreter unfamliar [sic] with Petitioner's constitutional rights.
>
> **Ground Two:** The right to a motion of acquittal under Criminal Rule 29 is paramount in the interest of justice under due process of law. Petitioner's Fifth and Fourteenth Amendments to the United States Constitution are violated when the State is unable to prove each element of a crime where the manifest weight and sufficiency to establish a violation of R.C. 2925.11.

(Petition, ECF No. 3, PageID 37, 40.)


**Ground One: Motion to Suppress**


In his First Ground for Relief, Petitioner asserts his statements to police officers should have been suppressed because he did not understand his *Miranda* rights or voluntarily waive them. The Report noted the general rule that when a state court decides on the merits a federal constitutional question later presented in habeas corpus, the federal court must defer to the state court ruling unless it is an objectively unreasonable application of clearly established U.S. Supreme Court precedent or based on an unreasonable determination of the facts in light of the

2

evidence presented (Report, ECF No. 4, PageID 55). Reviewing the Second District's decision on the First Ground for Relief, the Magistrate Judge found it was entitled to deference under the AEDPA. *Id.* at PageID 57. The Report noted the Sixth Circuit's summary of the *Miranda* requirements in *Garner v. Mitchell*, 557 F.3d 257 (6th Cir. 2009), and particularly that the Supreme Court's original purpose in Miranda was "'reduce the likelihood that the suspects would fall victim to constitutionally impermissible practices of police interrogation.'" *Id.* at 262, *quoting New York v. Quarles*, 467 U.S. 649, 656 (1984).

In his Objections, Petitioner claims there should be no such deference. He conflates two questions about understanding the *Miranda* warnings: understanding the English words in which they are spoken and understanding the law that they are meant to convey, to wit, that an arrested person has the right to remain silent; that if he does not do so, what he says may be used against him in court; that he has a right to refuse to speak to the police without an attorney present; and that an attorney will be appointed for him if he is unable to afford counsel.

As to whether a waiver of rights is voluntary, there can be no involuntariness finding without police overreaching. *Colorado v. Connelly,* 479 U.S. 157(1986). Petitioner implies that such overreaching – in the form of beatings and imprisonment – happens in "many countries" and "[i]t even happens in this country." (Objections, ECF No. 7, PageID 69.) He then implies that he and his brother, Latinos, were pulled over on the basis of their ethnicity and presumed guilty of dealing drugs, citing statements of Donald Trump "and all those who support that adgenda to cast the bias and prejudice against Latino suspect." *Id.* at PageID 70.

This argument is a red herring[2]. Nothing raised on appeal to the Second District suggests

---

[2] From the text of his Objections, Petitioner's command of written English seems good. In case he is not familiar with the idiom, however, a "red herring" is an argument intended to distract the reader from the real issues, as a smelly fish might distract one from more important things.

3

the police were guilty of racial bias in making the initial stop or engaged in coercive tactics to obtain admissions after the stop was made.

Apart from being voluntary, the *Miranda* waiver must also be "made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." *Smith v. Mitchell*, 567 F.3d 246 (6th Cir. 2009), *quoting Colorado v. Spring,* 479 U.S. 564, 573 (1987). As to understanding the law underlying *Miranda*, Petitioner is correct in asserting that they are very complex and that "[m]ost Americans, born in country, have problems with understanding the intricate details of constitutional rights and the *Miranda* warnings." (Objections, ECF No. 7, PageID 68). But to find that a waiver was knowing and intelligent, the law does not require a sophisticated understanding of *Miranda* rights. Instead, the courts apply a totality of the circumstances test, as the Second District did here, to determine if a waiver if knowing, intelligent, and voluntary. Although Flores-Lopez criticized the oral translation given to him by the police interpreter, he does not quarrel with the finding that the *Miranda* advice of rights and waiver form was presented to him in written Spanish and he had no difficulty reading it. *Flores-Lopez, supra,* at ¶ 36. Nor does he quarrel with the fin ding that he was not under the influence of alcohol or drugs. *Id.*

As Petitioner himself admits, he certainly understood his situation well enough to "clearly state[d] to Officer Turk that he had no idea what was in the case and did not ask." And his attorney did not file a motion in limine to exclude the statements or object when Officer Turk repeated them at trial. *Flores-Lopez, supra,* at ¶ 37.

The Second District plainly recognized the governing federal law. *Flores-Lopez, supra,* at ¶¶ 31-32. Petitioner has not shown the appellate court's application of that law was an unreasonable application of any Supreme Court precedent. Therefore his objections to dismissal

4

of Ground One are not well taken.

**Ground Two:  Sufficiency of the Evidence**

In his Second Ground for Relief, Flores-Lopez claims his conviction is against the manifest weight of the evidence and unsupported by sufficient evidence to convict.  The Report points out that a manifest weight claim is not cognizable in habeas corpus, but proceeded to consider the sufficiency of the evidence claim under the doubly-deferential standard required by Supreme Court precedent (Report, ECF No. 4, PageID 58-59).

Under Ohio law, the State was required to prove Petitioner knowingly possessed the drugs in order to convict him.  Flores-Lopez emphasized in his Petition and emphasizes again in his Objections that he never admitted knowing the drugs were in the suitcase where they were found, that he was convicted on circumstantial evidence.  The Second District noted that, under Ohio law, circumstantial evidence can be sufficient to prove knowing possession.  In this case the evidence that the jury believed and the Second District accepted was that the suitcase with the drugs "was located in close proximity to Eleazar's seat" and was moved to that location by Petitioner after it was placed in the van by another person.  *Flores-Lopez, supra*, at ¶ 57.  Furthermore clothing found in the suitcase was of two different sizes, consistent with sizes which would fit Petitioner and his co-defendant and brother, who was driving the van and improbable if the suitcase had been packed by the third party.  *Id.* at ¶¶ 58-59.

Petitioner argues that more evidence could have been presented, for example, there could have been fingerprints on the suitcase.  But Petitioner admits having moved the suitcase, so there was no need to present fingerprints evidence that he had touched it.  Nor does he deny that some

5

of the clothing in the suitcase would have fit him.

Petitioner argues that he and his brother Joel could not have possessed all the methamphetamine in the case, so it should be divided between them "and each defendant charged with only half of the amount, which would not have been equal to or exceeding 100 times the bulk amount." (Objections, ECF No. 7, PageID 76.) To the contrary is the finding of the Second District:

> {¶ 17} Matthew Fox, a forensic chemist from the Miami Valley Regional Crime Lab, tested the packages from the van for the presence of controlled substances. Fox, who was qualified as an expert, stated that he weighed the packages before testing. The gross weight of the sample, plus packaging, was 3,660 grams, plus or minus ten grams. Of this total amount, Fox tested one sample that was 444 grams plus or minus four grams. The bulk amount of methamphetamine in Ohio is 3 grams. Fox tested only the sample weighing 444 grams because that amount was over 100 times the bulk amount.

*Flores-Lopez, supra*. First of all, there is no prohibition on finding that two persons with equal access to contraband both were in constructive possession of it. But here the evidence of 100 times bulk was only from a "sample." Assuming the packaging weighed less than 660 grams, the total possessed by these two brothers would have been 1,000 times bulk. There was no reason for the State to provide this additional proof since the maximum sentence is provided for 100 times bulk.

Circumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence to exclude every reasonable hypothesis except that of guilt. *United States v. Ramirez*, 635 F.3d 249 (6th Cir. 2011); *United States v. Kelley,* 461 F.3d 817, 825 (6th Cir. 2006); *United States v. Reed,* 167 F.3d 984, 992 (6th Cir. 1999); *United States v. Beddow,* 957 F.2d 1330, 1334 (6th Cir. 1992). "[D]irect evidence of a fact is not required. Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence.

*Michalic v. Cleveland Tankers, Inc.*, 364 U.S. 325, 330 (1960)(Brennan, J.), citing *Rogers* v. *Missouri Pacific R. Co*., 352 U.S. 500, 508, n. 17(1957).

Because the circumstantial evidence presented here was constitutionally sufficient, the Second District's conclusion is not an objectively unreasonable application of *Jackson v. Virginia*, 443 U.S. 307 (1979), or based on an unreasonable determination of the facts. Ground Two should also be dismissed.

**Conclusion**

Having reconsidered the case in light of Petitioner's Objections, the Magistrate Judge again concludes the case should be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

**Order to the Clerk**

Pursuant to Rule 4 of the Rules Governing § 2254 Proceedings, the Clerk shall serve a copy of the Petition, the original Report and Recommendations, and this Supplemental Report on the Attorney General of Ohio.

November 23, 2018.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by mail. .Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).